IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

PAULA UNDERHILL, *Individually and as Special Administrator of the Estate of Galen Underhill*, and SEAN UNDERHILL,

    Plaintiffs,

vs.

COLEMAN COMPANY, INC.,

    Defendant.

Case No. 12-cv-129-JPG-DGW

**MEMORANDUM AND ORDER**

This matter comes before the Court on defendant Coleman Company, Inc.'s ("Coleman") appeal (Doc. 109) of the portion of Magistrate Judge Donald G. Wilkerson's September 26, 2013 order (Doc. 107) that denied Coleman's request to strike plaintiff Paula Underhill's and Sean Underhill's (collectively "Plaintiffs") rebuttal experts. Plaintiffs filed their response (Doc. 111). For the following reasons, the Court affirms Magistrate Judge Wilkerson's order.

**1. Background**

On the night of April 9, 2010, Galen Underhill and his son, Sean Underhill, went camping in a pop-up camper in Alhambra, Illinois. To keep warm they used a PowerMate Model 5045 propane radiant heater manufactured by Coleman. During the night, the heater released deadly amounts of carbon monoxide. As a result of their exposure to carbon monoxide, Galen Underhill died and Sean Underhill suffered serious injury. On January 10, 2012, plaintiffs filed their six-count complaint against Coleman in the Circuit Court for the Third Judicial Circuit, Madison County, Illinois. Thereafter, Coleman removed the case to the Southern District of Illinois based on diversity of citizenship pursuant to 28 U.S.C. § 1332.

Plaintiffs retained Dr. Gary Hutter, a mechanical engineer, as an expert witness in this case. Dr. Hutter had expressed his opinion in other cases involving carbon monoxide poisoning resulting from the PowerMate Model 5045 propane heater. Dr. Hutter has submitted three reports and a rebuttal report in this case. In Dr. Hutter's first and supplemental reports, dated November 9 and 12, 2012, he explained that the heater can be used to heat small spaces when the flow of fuel to the heater is restricted. The restricted fuel flow, however, can release lethal amounts of carbon monoxide. Dr. Hutter did not express an opinion that would support a manufacturing defect theory in his first two reports. Due to previous litigation involving the PowerMate Model 5045, Plaintiffs "understand the operation of these heaters, and, unlike other cases where the mechanics of the defect and/or injury may not be known, testing may not be necessary in this case." Doc. 64, p. 2.

On January 28 and 29, 2013, Coleman's expert, Dr. Richard Roby, conducted testing of the heater and propane cylinder at a facility in Baltimore, Maryland. Plaintiffs and their experts observed that testing. As a result of the testing, Dr. Roby suspected that the heater and/or propane tank had been altered by a third party after they left Coleman's control. Magistrate Judge Wilkerson authorized Coleman to perform destructive testing on the heater and propane cylinder which took place on April 30 and May 1, 2013. Again, Plaintiffs and their experts observed the testing. Magistrate Judge Wilkerson found that the results of both the non-destructive and destructive testing would be available to both parties to use as they saw fit.

After the additional testing, Dr. Hutter completed a Second Supplemental Report on May 14, 2013, wherein he reasserted the opinion contained in his first two reports. Additionally, Dr. Hutter identified potential manufacturing defects including an improperly installed thermocouple and an improperly adjusted set screw. Specifically, Dr. Hutter explained that the testing

"revealed that the location of the thermocouple on the subject Underhill heater in relation to the burner bowl was not in accordance with the manufacturer's specifications." Doc. 100-6, p. 3. He further explained that the "location of the thermocouple on the subject 5045 resulted in a failure of the thermocouple to detect a reduced thermal output condition which emitted a dangers quantity of CO and allowed the subject heater to operate at substantially reduced BTU levels that generated the carbon monoxide that killed Galen Underhill and injured Sean Underhill." Doc. 100-6, p. 3-4. He opined that the regulator on the heater is "defective as manufactured, assembled, or installed, and said defect is the cause of the diminished thermal BTU output of the subject heater and of the elevated CO levels." Doc. 100-6, p. 4-5. Plaintiffs filed Dr. Hutter's Second Supplemental Report with the Court on May 15, 2013, and sent supplemental interrogatory responses to Coleman indicating Plaintiffs were making a manufacturing defect claim. Coleman made no objection at that time.

Thereafter, on June 1, 2013, Coleman disclosed Dr. Roby's expert opinion. Dr. Roby opined that the heater failed to shut down because of the improper placement of the thermocouple, and this manufacturing defect was the result of a third-party alteration after the heater left Coleman's control. It was also Dr. Roby's opinion that Coleman's quality assurance and quality control procedures were sufficient to prevent the heater from leaving Coleman's control with such a defect. After deposing Dr. Roby, on July 21, 2013, Plaintiffs submitted the rebuttal reports of Dr. Hutter and Dr. Felix Lee, a quality control expert.

Coleman filed a motion to strike the rebuttal reports of Dr. Hutter and Dr. Lee arguing that the reports contained new opinions and a new case theory. Specifically, Coleman argued that Plaintiffs' previous expert reports only alleged the heater was defective in design in that restricted fuel flow caused the release of deadly amounts of carbon monoxide. Coleman

acknowledges that Dr. Hutter referenced a manufacturing defect in his Second Supplemental Report, but Coleman describes this as merely "lip service" and "hollow words." Doc. 100, p. 6. As such, Coleman maintains that Dr. Hutter did not specifically identify a manufacturing defect until his rebuttal report, and the Court must strike the rebuttal report because it sets forth a manufacturing defect opinion that was not asserted in the initial or supplemental reports contrary to law.

Magistrate Judge Wilkerson disagreed with Coleman finding that the expert reports were proper rebuttal opinion because they directly rebutted Dr. Roby's opinion. Specifically, Dr. Lee opined that Coleman's quality control and assurance procedures were inadequate, directly rebutting Dr. Roby's assertion that Coleman's quality control procedures were adequate to prevent a defective heater from leaving Coleman's plant. Dr. Hutter opined that the defect existed before the heater left Coleman's plant, directly rebutting Dr. Roby's assertion that the heater was altered after it left the plant. Accordingly, Magistrate Judge Wilkerson denied Coleman's motion to the extent it sought to strike the experts' report for introducing a new case theory.

Coleman filed the instant appeal of Magistrate Judge Wilkerson's order. Coleman argues that Magistrate Judge Wilkerson made a significant mistake in allowing Plaintiffs to submit rebuttal reports containing new theories. Coleman asks this Court to set aside Magistrate Judge Wilkerson's order and strike Dr. Hutter's and Dr. Lee's rebuttal reports. The Court will now consider the merits of Coleman's objection.

   2. Analysis

A district court reviewing a magistrate judge's decision on nondispositive issues should modify or set aside that decision if it is clearly erroneous or contrary to law. *See* Fed. R. Civ. P.

72(a); 28 U.S.C. § 636(b)(1)(A). Accordingly, the Court will affirm Magistrate Judge Wilkerson's decision unless his factual findings are clearly erroneous or his legal conclusions are contrary to law. *Id.*

Federal Rule of Civil Procedure 26(a) requires that an expert witness report must contain "a complete statement of all opinions and the basis and reasons for them." A party that fails to provide information required by Rule 26(a) is not permitted to use that information "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Coleman's assertion that Plaintiffs' experts' rebuttal reports introduce new case theories rests on the idea that Dr. Hutter's Second Supplemental Report did not sufficiently identify a manufacturing defect pursuant to Federal Rule of Civil Procedure 26. Coleman says these words merely pay "lip service" to a manufacturing defect claim and are "hollow." However, Coleman cites no authority to back up its assertion that Dr. Hutter's Second Supplemental Report was insufficient in this respect. Rather, it appears that Dr. Hutter formed an additional theory after participating in Coleman's testing and provided a supplemental report to disclose that theory. This was consistent with Magistrate Judge Wilkerson's finding that the parties could use the additional testing as they saw fit, and Coleman did not object to that finding.

Coleman cites to *Braun v. Lorillard, Inc.* for support; however, that case is distinguishable from the present set of facts. 84 F.3d 230 (7th Cir. 1996). In *Braun*, the plaintiffs did not inform defendants they planned to call a witness until ten days before trial and failed to list the witness in the pretrial order. *Id*. at 236. The district court judge decided plaintiffs could not add the witness for their case in chief. *Id*. The plaintiffs then tried to introduce the same witness as a rebuttal witness, and the district court did not allow it. *Id*. at 237. The Seventh Circuit found that the district court judge did not abuse her discretion because

5

"[t]he plaintiff who knows that the defendant means to contest an issue that is germane to the prima facie case (as distinct from an affirmative defense) must put in his evidence on the issue as part of his case in chief. . . . Otherwise the plaintiff could reverse the order of proof, in effect requiring the defendants to put in their evidence before the plaintiff put in his." *Id*.

Here, unlike *Braun*, Plaintiffs disclosed Dr. Hutter's expert report containing his alternative manufacturing defect theory and supplemented their interrogatory responses to include this new theory as part of their case in chief prior to the production of Dr. Roby's report. Accordingly, this is not a case like *Braun* where the plaintiffs plan to reverse the order of proof requiring Coleman to put on its evidence first.

Dr. Hutter's and Dr. Lee's rebuttal reports, including their elaboration on opinions included in Dr. Hutter's Second Supplemental Report, were appropriate. "The proper function of rebuttal evidence is to contradict impeach or defuse the impact of the evidence offered by an adverse party." *Peals v. Terre Haute Police Dept.*, 535 F.3d 621, 630 (7th Cir. 2008) (quoting *United States v. Grintjes*, 237 F.3d 876, 879 (7th Cir. 2001)). Rebuttal evidence "offered only as additional support to an argument made in a case in chief, if not offered 'to contradict, impeach or defuse the impact of the evidence offered by an adverse party, is improper." *Peals*, 535 F.3d at 630. Here, Dr. Hutter's and Dr. Lee's reports were offered to contradict, impeach, and/or diffuse Dr. Roby's opinions that any manufacturing defect occurred after the heater left Coleman's control and that Coleman's quality assurance procedures would have caught the defect in question before the heater left Coleman's facility. Accordingly, these rebuttal reports were not offered only as additional support to the opinions expressed in Dr. Hutter's Second Supplemental Report.

The Court concludes that Magistrate Judge Wilkerson's factual findings are not clearly erroneous and his legal conclusions are not contrary to law.

### 3. Conclusion

For the foregoing reasons, the Court **DENIES** Coleman's appeal (Doc. 109) and **AFFIRMS** Magistrate Judge Wilkerson's order dated September 26, 2013 (Doc. 107).

**IT IS SO ORDERED.**

**DATED:** November 18, 2013

s/ J. Phil Gilbert<br>
**J. PHIL GILBERT**<br>
**DISTRICT JUDGE**