IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

PAULA UNDERHILL, *Individually and as*
*Special Administrator of the Estate of Galen*
*Underhill*, and SEAN UNDERHILL,

     Plaintiffs,

  vs.

COLEMAN COMPANY, INC.,

     Defendant.

Case No. 12-cv-129-JPG-DGW

## MEMORANDUM AND ORDER

This matter comes before the Court on the following motions for summary judgment: (1) plaintiffs Paula Underhill's, *Individually and as Special Administrator of the Estate of Galen Underhill*, and Sean Underhill's (collectively "Plaintiffs") motion for summary judgment (Doc. 117), to which defendant Coleman Company, Inc. ("Coleman") responded (Doc. 133) and Plaintiffs replied (Doc. 137); (2) Plaintiffs' motion for summary judgment on Coleman's affirmative defenses (Doc. 119), to which Coleman responded (Doc. 134) and Plaintiffs replied (Doc. 136); and (3) Coleman's motion for summary judgment (Doc. 123), to which Plaintiffs responded (Doc. 135). For the following reasons, the Court denies Plaintiffs' first motion for summary judgment (Doc. 117), strikes Plaintiffs' second motion for summary judgment on Coleman's affirmative defenses (Doc. 119), and grants in part and denies in part Coleman's motion for summary judgment (Doc. 123).

### 1. Background

The parties agree on the following facts. On the night of April 9, 2010, Galen Underhill and his son, Sean Underhill, went camping in a pop-up camper in Alhambra, Illinois. To keep

warm they used a PowerMate Model 5045 propane radiant heater manufactured by Coleman. During the night, the heater released deadly amounts of carbon monoxide ("CO"). As a result of their exposure to CO, Galen Underhill died and Sean Underhill suffered serious injury.

The PowerMate 5045 heater is a large commercial heater that is designed to operate off of a 20-pound or larger propane tank. Coleman designed this model of heater in 1994, and the heater at issue in this case was manufactured in 1995. It contained the following on-product warning:

  Warning:

- For outdoor or well ventilated construction use only. Never use inside house, camper, tent, vehicle or other unventilated or enclosed areas. . . .
- Never modify or alter heater in any way.

Doc. 123-6. On April 9, 2010, and previous occasions, Galen Underhill and/or Sean Underhill used the heater while camping.

On January 10, 2012, Plaintiffs filed their six-count complaint against Coleman in the Circuit Court for the Third Judicial Circuit, Madison County, Illinois. Thereafter, Coleman removed the case to the Southern District of Illinois based on diversity of citizenship pursuant to 28 U.S.C. § 1332. Since that time, Plaintiffs have filed four amended complaints. The relevant complaint in this order is the fourth amended complaint (Doc. 67).

Initially, Plaintiffs alleged a design defect theory, arguing improper placement of the thermocouple and the absence of an oxygen depletion sensor ("ODS") made the heater unreasonably dangerous. Plaintiffs' experts provided support for these theories based on their involvement in previous Coleman heater design defect cases and without inspection of the

incident heater.  Thereafter, the parties conducted an inspection of the incident heater and discovered that the thermocouple was not placed in accordance with design specifications.  As such, Plaintiffs' expert, Dr. Gary Hutter, provided a Second Supplemental Report supporting a manufacturing defect theory.  Coleman previously argued that Dr. Hutter's opinion did not provide support for a manufacturing defect claim in Plaintiffs' case-in-chief.  Magistrate Judge Wilkerson, however, found Dr. Hutter's Second Supplemental Report properly provided support for a manufacturing defect claim and this Court affirmed that order.  The parties' now seek summary judgment on various issues.  The Court will consider each motion in turn.

## 2.  Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a);  *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);  *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000).  The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986);  *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008);  *Spath*, 211 F.3d at 396.  Where the moving party fails to meet its strict burden of proof, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists.  Fed. R. Civ. P. 56(e)(2); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996).  A genuine issue of material

fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252.

### 3.  Plaintiffs' Motion for Summary Judgment (Doc. 117)

In their first motion for summary judgment, Plaintiffs seek summary judgment on the following facts: (a) that the Coleman Powermate 5045 was the sole source of the CO that caused the death of Galen Underhill and the injury to Sean Underhill; (b) that neither Galen Underhill nor Sean Underhill read the on-product warning label present on the Powermate 5045 heater; (c) that neither Galen Underhill nor Sean Underhill noticed the on-product warning label present on the Powermate 5045 heater; and (d) that neither Galen Underhill nor Sean Underhill knew that CO was a byproduct of propane radiant heaters, including the Powermate 5045 heater.

As an initial matter, Coleman argues that this Court cannot enter summary judgment on these specific facts put forth by Plaintiffs.  Coleman cites no support for this proposition. Federal Rule of Civil Procedure 56(g) indicates that the Court "may enter an order stating any material fact – including an item of damages or other relief – that is not genuinely in dispute and treating the fact as established in the case."  Accordingly, this Rule indicates that the Court is authorized to declare that specific facts, not just entire claims or defenses, are established.   The Court will consider each fact in turn.

### a.  Fact 1: The Heater was the Sole Source of CO that Caused the Injuries

First, Plaintiffs seek to establish the fact "that the Coleman Powermate 5045 was the sole source of the CO that caused the death of Galen Underhill and the injury to Sean Underhill."

Plaintiffs refer to the deposition of Richard Roby, Coleman's expert, in support of their contention that the Powermate 5045 was the sole source of CO in the tent the night of the incident.  Roby stated, "It is my opinion that the subject heater produced sufficient CO in its modified condition to result in the death of Galen Underhill, and that was the only source of CO in the trailer that night," and "The same is true as the [sic] Sean's injuries as well."

Coleman's brief states "Coleman does not dispute that the evidence indicates that the incident heater was the only product that appears to have created CO that injured Plaintiffs." Doc. 133, p. 9.  Thereafter, Coleman points to portions of Roby's report in which Roby states:

> Based on witness testimony and evidence recovered from the scene, although all of the other combustion devices cannot be completely eliminated, the Coleman 5045 heater was the only combustion device that was known to have been operated and was still operating when Galen and Sean were discovered.  Hence, the heater cannot be ruled out as the source of the [CO] which led to the death of Galen Underhill and injury of Sean Underhill.

Doc. 133-6, p. 5.

Here, Plaintiffs have not produced evidence that the Powermate 5045 heater was the *sole* source of CO.  Roby's deposition testimony suggests that the heater produced *sufficient* CO to cause the injuries and was the only source in the camper.  This leaves open the possibility that there were sources of CO *outside* of the camper.  Further, Roby's report indicates there were other sources of CO in the vicinity that could not be "completely eliminated."  Accordingly, this Court cannot conclude that this issue is not genuinely in dispute and denies summary judgment in that respect.

        b.  Fact 2: Neither Galen Underhill nor Sean Underhill Read the Powermate 5045's On-Product Warning Label

Second, Plaintiffs seek to establish "that neither Galen Underhill nor Sean Underhill read the on-product warning label present on the Powermate 5045 heater."  To establish this fact,

Plaintiffs point to Sean Underhill's deposition in which he stated that he did not look at these warnings. Further, Plaintiffs argue Coleman conceded this matter when it answered discovery requests for the content of the warning label as follows: "Coleman objects to this request as harassing as the evidence reveals that neither Sean Underhill nor Galen Underhill ever read the warnings on the heater." Coleman argues the Court should deny summary judgment on this matter because it is best left to the jury to evaluate Sean Underhill's credibility.

The Court agrees that this fact is best left for the jury's determination. The appearance and placement of the warning label itself provides some evidence from which a jury could conclude that either Galen Underhill or Sean Underhill read the warning. Accordingly, the Court cannot find that this fact is not genuinely in dispute and denies Plaintiffs' motion for summary judgment in that respect.

c. Fact 3: Neither Galen Underhill nor Sean Underhill Noticed the On-Product Warning Label on the Powermate 5045 Heater

Third, Plaintiffs seek summary judgment on the following fact: "neither Galen Underhill nor Sean Underhill noticed the on-product warning label present on the Powermate 5045." Plaintiffs again point to Sean Underhill's deposition testimony in which he testifies he did not read the product warnings, and the "concession" by Coleman that neither Sean Underhill nor Galen Underhill read the warnings. They further point to the opinion of Dr. Michael Wogalter, an expert in human factors engineering, in which he opines that the warning would not be noticeable to consumers. Coleman argues that the Court should deny this portion of Plaintiffs' motion because the referenced testimony refers to whether Sean Underhill *read*, not *noticed*, the warnings, and Coleman contends the jury should consider the warning label itself.

The Court agrees with Coleman. The referenced testimony only refers to whether Sean Underhill *read* the warning, not whether he noticed it. Further, the jury should have the

6

opportunity to view the label on the side of the heater, consider the expert testimony, and then determine whether Galen Underhill and/or Sean Underhill *noticed* the warning. Accordingly, the Court cannot conclude that this fact is not genuinely in dispute and denies Plaintiffs' motion for summary judgment in that respect.

> ### d. Fact 4: Neither Galen Underhill nor Sean Underhill Knew that CO was a Byproduct of Propane Radiant Heaters, Including the Powermate 5045 Heater

Finally, Plaintiffs ask this Court to grant summary judgment on the fact that neither Galen Underhill nor Sean Underhill knew that CO was a byproduct of radiant heaters, including the Powermate 5045 heater. In support of their argument, Plaintiffs point to Sean Underhill's deposition testimony in which he states that he was not aware and he did not believe Galen Underhill was aware that the heater emitted CO. Plaintiffs further cite to depositions in which different individuals state their belief that neither Galen Underhill nor Sean Underhill had knowledge that the heater emitted CO.

Coleman asserts that circumstantial evidence indicates that Galen Underhill and Sean Underhill knew that the heater emitted CO. For instance, the evidence indicates that Gary Roberts, a family friend that camped with Galen Underhill and Sean Underhill, had concerns about asphyxiation and would ventilate his tent. There is also evidence that Nick Rohr, Roberts' son, expressed his concern that the operation of the heater "could kill us."

Coleman has pointed to evidence that disputes Plaintiffs' assertion that Galen Underhill and Sean Underhill knew that the heater emitted CO. For instance, a jury could conclude that Roberts' actions in ventilating the tent put Galen Underhill and/or Sean Underhill on notice that the heater emitted some substance that was potentially dangerous. Accordingly, the Court cannot conclude that this fact is not genuinely in dispute and denies Plaintiffs' motion for summary judgment to that extent.

For the foregoing reasons the Court denies Plaintiffs' motion for summary judgment (Doc. 117) in its entirety.  The Court will now take up Plaintiffs' motion for summary judgment on Coleman's affirmative defenses.

### 4.  Plaintiffs' Motion for Summary Judgment on Coleman's Affirmative Defenses (Doc. 119)

As initial matter, the Court notes that Plaintiffs have simultaneously filed two motions for summary judgment.  The Court has already considered the first motion for summary judgment in this Order.  Plaintiffs' second motion seeks summary judgment on several of Coleman's affirmative defenses.  Plaintiffs have provided no legitimate reason that necessitates two separate motions for summary judgment.  The Plaintiffs have the same counsel, and their causes of action rely on the same facts and theories of law.  The Court assumes Plaintiffs' actions are an attempt to avoid the page limit contained in Local Rule 7.1.  *See* SDIL-LR 7.1 ("[n]o brief shall be submitted which is longer than 20 double-spaced typewritten pages . . . .")  As such, the Court strikes Plaintiffs' motion for summary judgment on Coleman's affirmative defenses (Doc. 119) which was the later-filed brief.  However, even if the Court were to consider the motion, the Court would deny the motion for the following reasons.

In the second motion for summary judgment, Plaintiffs argue they are entitled to summary judgment on ten of Coleman's affirmative defenses as follows: (1) Fourth Affirmative Defense – that the product at issue was abused, misused, improperly used, improperly maintained and/or damaged, subsequent to the time it left the care, custody and control of the manufacturer and/or retailer for which Coleman is not liable; (2) Sixth Affirmative Defense – that the product(s) at issue were subject to abnormal and/or unintended use and/or unintended users, which was unreasonable and/or unforeseeable by Coleman and for which Coleman is not

liable; (3) Ninth Affirmative Defense – that if Plaintiffs sustained the injuries as alleged in Plaintiffs' Complaint, which is expressly denied, such injuries arose from, and were caused by, risks, hazards, and dangers knowingly assumed by Plaintiffs; (4) Twelfth Affirmative Defense – that the risk of any alleged injuries sustained by Plaintiffs, if in fact they were injured, was not reasonably foreseeable to Coleman; (5) Fifteenth Affirmative Defense – that Plaintiffs have failed to preserve in its immediate post-accident condition the Coleman heater referred to in Plaintiffs' Complaint, which bars Plaintiffs' recovery against Coleman as a result of the spoliation of evidence; (6) Sixteenth Affirmative Defense – that the injuries and damage, if any, of which Plaintiffs complain were proximately caused or contributed to by misuse, abuse, improper use, improper maintenance, and/or damage of the subject product, or by use of the same in an unintended fashion by an unintended use or for an unforeseeable purpose; (7) Nineteenth Affirmative Defense – that any danger alleged to be associated with its product(s) was open and obvious; (8) Twenty-Third Affirmative Defense -  that Plaintiffs' claims are barred by any and all applicable statutes of limitations; (9) Twenty-Fourth Affirmative Defense – that Plaintiffs' claims are barred by any and all applicable statutes of repose; and (10) Twenty-Fifth Affirmative Defense – that Plaintiffs' claims are barred or reduced because Plaintiffs, through their experience, knowledge, training, education, skill or otherwise, were sophisticated users of the products in question and knew or should have known of the dangers alleged in Plaintiffs' Complaint.

Coleman does not contest Plaintiffs' motion with respect to the following affirmative defenses: (1) the Fifteenth Affirmative Defense of spoliation of evidence; (2) the Twenty-Third Affirmative Defense that Plaintiffs' claims are barred by the statute of limitations; and (3) the Twenty-Fifth Affirmative Defense that Plaintiffs were sophisticated users.  As such, the Court

need not consider the uncontested portions of the motion, and will only address the arguments on the remaining seven affirmative defenses on which Plaintiffs contend they are entitled to judgment as a matter of law.

      a.   Fourth Affirmative Defense

For its Fourth Affirmative Defense, Coleman contends that the heater "was abused, misused, improperly used, improperly maintained and/or damaged, subsequent to the time it left the care, custody and control of the manufacturer and/or retailer for which Coleman is not liable. Doc. 69, p. 13. Plaintiffs first assert they are entitled to summary judgment on this defense because there is no evidence that the defect was caused by post-sale damage or wear. Plaintiffs argue there was no "misuse" of the heater because Coleman, by its own admission, could foresee that users of the heaters would use them in enclosed spaces.

Coleman responds and points to Dr. Roby's expert report, wherein he observed that the positions of both the thermocouple and the internal set screw on the incident heater had been altered after leaving the manufacturer. Doc. 134-5, p. 20. The report explained that these alterations "allowed the incident heater to operate at a substantially reduced output for an indefinite period of time instead of shutting the burner off, thereby defeating this important safety system." *Id.* Dr. Roby concluded that "[t]hese alterations were found to be the cause of the significant reduction in flow of propane to the burner resulting in the generation of lethal levels of CO." *Id.*

    The Court notes that "[u]nder Illinois law, misuse is not an affirmative defense; rather, absence of misuse is part of a plaintiff's proof of an unreasonably dangerous condition or of proximate cause." *Schwartz v. American Honda Motor Co.*, 710 F.2d 378 (7th Cir. 1983) (citing *Ill. State Trust Co. v. Walker Manufacturing Co.*, 392 N.E.2d 70, 73 (Ill. 1979)). Misuse occurs

when an item is "used 'for a purpose neither intended nor foreseeable (objectively reasonable)'

by its manufacturer or distributor." *Walker v. Trico Mfg. Co.*, 487 F.2d 595, 598 (7th Cir. 1973).

Here, Coleman has presented evidence of misuse. Based on Dr. Roby's report, a jury

could reasonably conclude that Coleman could not foresee that a user would make the suggested

alterations causing the release of lethal amounts of CO. Accordingly, the issue of misuse should

be presented to the jury, and the Court would deny Plaintiffs' motion for summary judgment on

the Fourth Affirmative Defense.

> b. Sixth Affirmative Defense

In its Sixth Affirmative Defense, Coleman contends that the heater was "subject to

abnormal and/or unintended use and/or unintended users, which was unreasonable and/or

unforeseeable by Coleman and for which Coleman is not liable." Doc. 69, p. 14. Plaintiffs first

contend that the heater was not subject to abnormal or unintended use because the use of the

heater inside an enclosure was foreseeable to Coleman. Plaintiffs also argue that "[t]o claim that

two men who operated a heater during a hunting and recreational activity was an unintended or

unforeseeable use is simply not arguable." Doc. 120, p. 7.

Coleman asserts it will not argue at trial that use in enclosed spaces is unforeseeable or

that Galen Underhill and Sean Underhill were unforeseeable users. However, Coleman argues

that the "abnormal and/or unintended use" issue should not be dismissed for the same reasons

that the "misuse" issue should not be dismissed.

The Court agrees with Coleman. The alterations of the thermocouple and set screw are

evidence from which a jury could conclude the heater was subject to "abnormal and/or

unintended use." Further, while it may be foreseeable that consumers would use the heater in

enclosed spaces and thus not constitute "misuse," that action is clearly relevant to a

determination of compensatory damages. *See Malen v. MTD Products, Inc.*, 628 F.3d 296, 313 (7th Cir. 2010) (In Illinois "[c]omparative fault applies so that former defenses such as contributory negligence, assumption of risk, and misuse of the product are merely damage-reducing factors."). For the foregoing reasons, the Court would deny summary judgment to the extent Plaintiffs seek to bar the issue of "abnormal and/or unintended use" from the jury's consideration.

c. Ninth Affirmative Defense

In its Ninth Affirmative Defense, Coleman contends that Galen Underhill and Sean Underhill assumed the risk of any resulting injuries. Plaintiffs argue this affirmative defense must be dismissed because Coleman has failed to produce evidence that either Galen Underhill or Sean Underhill knew that propane heaters produced CO. They point to Sean Underhill's deposition in which he states he did not know CO was a byproduct of the heater, and they point to several other depositions in which individuals speculate that Galen Underhill did not know that propane heaters produced CO.

Coleman urges the Court to deny this portion of the motion. It points to the warning label on the heater. Further, the deposition of Gary Roberts indicates that he had concerns about operating the heater in the enclosed space when he was camping with the Underhills and would ventilate the area as a result of those concerns. Nick Rohr camped with the Underhills and "freaked out" after observing the heater and stated "hey, that could kill us."

Under Illinois law, assumption of risk is an affirmative defense of which the defendant bears the burden. *Campbell v. Nordco Prods.*, 629 F.2d 1258, 1262 (7th Cir. 1980). The defendant must show that "the user of a product voluntarily and deliberately exposes himself to a danger that is either known to him or is so open and obvious that it must have been

comprehended." *Id*.  This defense employs a subjective standard and the defendant must show

that the plaintiff "knowingly, voluntarily, and deliberately encountered the hazard."  *Id*.

The Court agrees that there is sufficient evidence from which a jury could reasonably

conclude that Galen Underhill and Sean Underhill assumed the risk.  Plaintiff mistakenly

suggests that Galen Underhill and Sean Underhill had to have knowledge that the heater emitted

CO.  While they may not have known that the heater specifically emitted CO, there is evidence

from which a jury could reasonably conclude that they knew the heater was hazardous.  Such

evidence includes the warning label itself and the deposition of Gary Roberts.  As such, the

Court would deny Plaintiffs' motion for summary judgment on Coleman's Ninth Affirmative

Defense.

d.  Twelfth Affirmative Defense

In its Twelfth Affirmative Defense, Coleman contends that any injury to Galen Underhill

and Sean Underhill was not reasonably foreseeable.  Plaintiffs argue this defense must be

dismissed because Coleman knew that its propane heaters released CO and had harmed others.

Coleman argues that this portion of the motion must be denied because Plaintiffs narrowly focus

on the release of CO and it was not foreseeable that a consumer would alter the thermocouple

and set screw causing the release of lethal amounts of CO.  In their reply, Plaintiffs do not

address Coleman's argument concerning the foreseeability of altering the thermocouple and set

screw, but continue to focus on the foreseeability of the heater's release of CO.

The Court agrees with Coleman.  Coleman has evidence that the aforementioned

alterations occurred after the heater left Coleman's control and presented sufficient evidence

from which a reasonable jury could conclude that it was not foreseeable that a consumer would

make these alterations that resulted in the release of lethal amounts of CO.  Accordingly, the

13

Court would deny Plaintiffs' motion for summary judgment on Coleman's Twelfth Affirmative Defense.

      e.   Sixteenth Affirmative Defense

In its Sixteenth Affirmative Defense, Coleman asserts that Galen Underhill's and Sean Underhill's injuries "were proximately caused or contributed to by misuse, abuse, improper use, improper maintenance, and/or damage of the subject product, or by the same in an unintended fashion by an unintended use or for an unforeseeable purpose." Doc. 69, p. 15. Plaintiffs argue this defense should be dismissed because it "restates and combines in whole their fourth and sixth affirmative defenses" on which they argue they are also entitled to judgment as a matter of law. Coleman agrees that aspects of this defense are repetitive, but points out that this defense puts forth their comparative negligence theory.

Illinois law recognizes the defense of comparative negligence, which requires the reduction of plaintiffs' damages "in accordance with the percentage of fault attributable to him." *Walsh v. Emergency One, Inc.*, 26 F.3d 1417, 1421 (7th Cir. 1994). Here, Coleman has introduced evidence that the thermocouple and set screw in the heater were altered after the heater left Coleman's possession, which led to the release of lethal amounts of CO. Coleman has also produced evidence showing the warning label that directed the consumer to use the heater only in well-ventilated areas. From this evidence a reasonable jury could conclude that Galen Underhill and Sean Underhill were comparatively negligence and reduce Plaintiffs' damages accordingly. Thus, the Court would deny Plaintiffs' motion for summary judgment on Coleman's Sixteenth Affirmative Defense.

f.   Nineteenth Affirmative Defense

In its Nineteenth Affirmative Defense, Coleman contends "that any danger alleged to be associated with its products(s) was open and obvious."  Plaintiffs argue they are entitled to judgment as a matter of law on this defense because Coleman "cannot meet its burden to show that the risk of CO is an open and obvious danger."

Under Illinois law, "a manufacturer generally has no duty to warn of open and obvious dangers."  *Lederman v. Pacific Indus., Inc.*, 119 F.3d 551, 553 (7th Cir. 1997) (citing *Klen v. Asahi Pool, Inc.*, 643 N.E.2d 1360, 1366 (Ill. 1994)); *Blue v. Environmental Engineering, Inc.*, 828 N.E.2d 1128, 1144 (Ill. 2005).  Determining whether a danger is open and obvious requires an objective inquiry – whether a reasonable adult would have concluded the product presented a danger.  *Lederman*, 119 F.3d at 554.  Whether a danger is open and obvious is also relevant in apportioning comparative fault.  Courts have found open and obvious dangers include fire, height, and bodies of water.  *Lederman*, 119 F.3d at 553-54.

Here, the release of CO, an invisible and odorless gas, is unlike the clearly obvious dangers posed by fires, heights, or bodies of water.  Coleman, however, has introduced evidence that a warning label on the heater instructed consumers to use the heater only in well-ventilated areas and to never alter the heater.  From these warnings, a jury could find that the danger posed by the heater was open and obvious.  *See Haddix v. Playtex Family Prods. Corp.*, 138 F.3d 681 (7th Cir. 1998) (the court concluded that the dangers presented by the risk of toxic shock syndrome through the use of tampons was obvious because of the warnings placed on the box and in the instructions).  Accordingly, the Court would deny Plaintiffs' motion for summary judgment on Coleman's Nineteenth Affirmative Defense.

g.   Twenty-Fourth Affirmative Defense

In its Twenty-Fourth Affirmative Defense, Coleman argues that Plaintiffs' claims are barred by the statute of repose.  Plaintiffs argue that Coleman does not have sufficient evidence to support this affirmative defense.  Coleman indicates it does not know the exact date of first sale; however, Coleman provides evidence that the heater was manufactured in 1995.  Further, sales numbers would allow a reasonable jury to find that the heater was sold before 1997 and the case is thus barred by the statute of repose.

The Illinois statute of repose in a products liability case provides that

no product liability action based on any theory or doctrine shall be commenced except within the applicable limitations period and, in any event, within 12 years from the date of first sale, lease or delivery of possession by a seller or 10 years from the date of first sale, lease or delivery of possession by its initial user, consumer, or other non-seller, whichever period expires earlier, of any product unit that is claimed to have injured or damaged the plaintiff . . . .

735 ILCS 5/13-213(b).

Coleman has pointed to evidence that indicates the incident heater was manufactured in 1995, fifteen years prior to the incident.  The affidavit of Stuart L. Meether, Coleman's Vice President of Global Research and Production Development indicates that Coleman had to increase production levels to meet the demand for its Powermate heaters.  Doc. 134-4.  From Meether's affidavit and the attached sales figures, a jury could reasonably conclude that the incident heater was sold at least by 1997.  Accordingly, the Court would deny Plaintiffs' motion for summary judgment on Coleman's Twenty-Fourth Affirmative Defense.

**5.   Coleman's Motion for Summary Judgment (Doc. 123)**

Next, the Court will consider Coleman's motion for summary judgment.  Coleman argues it is entitled to summary judgment on the following issues: (1) the design defect claims based on the absence of an ODS and thermocouple placement; (2) the manufacturing defect claims; (3) the

post-sale duty to warn claims; (4) the warnings claims; and (5) punitive damages.  The Court will consider each in turn.

a.  Design  Defect Claims

Plaintiffs concede they have abandoned their design defect claim based on the absence of an ODS.  Accordingly, the Court grants summary judgment in favor of Coleman to that extent. Plaintiffs, however, argue that they have not abandoned their design defect claim with respect to thermocouple placement.  As such, the Court will address whether Coleman is entitled to judgment as a matter of law on the design defect claim based on improper thermocouple placement.

Without testing the incident heater, Plaintiffs' defective design theory alleged the heater was defective because it lacked an ODS and the thermocouple was improperly placed as evidenced by the design specifications.  Based on their prior experience with Coleman heater litigation and without testing the incident heater, Plaintiffs' experts opined that the accident occurred from "tank valve control."  Thereafter, the parties tested the incident heater and discovered that the thermocouple was not in the location indicated in the design specifications. Coleman now argues that Plaintiffs' theory changed to a manufacturing defect resulting from improper placement of the thermocouple and set screw in the regulator at the time of assembly of the heater.  As such, Coleman contends Plaintiffs have abandoned their design defect claim based on thermocouple placement.

Plaintiffs responded contending that they have not abandoned their claim that the thermocouple placement constituted a design defect.  Specifically, Plaintiffs point to Dr. Gary M. Hutter's Second Supplemental Report, created after testing of the incident heater (Doc. 123-12). Dr. Hutter noted that testing of the incident heater revealed that the thermocouple on the incident

heater was not placed in accordance with the manufacturer's specifications.  Dr. Hutter opined

that "the location of the thermocouple against the burner bowl was the result of improper

installation at the time of assembly of the heater."  *Id*.  That improper location caused the

thermocouple to fail to detect the reduced thermal output that led to Plaintiffs' injuries.  Finally,

Dr. Hutter contends that

> [h]ad Coleman designed and manufactured the [heater] with the thermocouple
> placed at an appropriate location and distance from burner assembly, the
> thermocouple would not have allowed the heater to operate at a reduced thermal
> condition and this accident would not have occurred.

*Id*.

It appears that Plaintiffs are attempting to maintain both (1) a manufacturing defect claim

wherein they argue that the thermocouple was improperly placed at the time of manufacture, and

(2) a product defect claim wherein they argue that the thermocouple placement was defectively

designed.  These arguments are inconsistent.  Plaintiff cannot maintain a design defect claim at

the same time it argues that the thermocouple was not placed pursuant to design specifications.

Any thermocouple design defect pursuant to Coleman's design specifications could not have

caused the injury at hand because the thermocouple was not in the place specified in the design

specifications.  Accordingly, the Court grants Coleman's motion for summary judgment on

Plaintiffs' design defect claim relative to thermocouple placement.

### b.   Manufacturing Defect Claims

Next, Coleman argues that it is entitled to summary judgment on Plaintiffs'

manufacturing defect claims.  Specifically, Coleman argues that Plaintiffs (1) only have rebuttal

evidence regarding the manufacturing defect claim, and (2) cannot establish the manufacturing

defect existed at the time the heater left Coleman's control.

In a previous order (Doc. 129), this Court already determined that Dr. Hutter properly presented his opinion regarding the manufacturing defect in his Second Supplemental Report. Accordingly, Plaintiffs may use Dr. Hutter's manufacturing defect opinion in their case in chief. Thus, for the reasons already set forth by this Court (Doc. 129), the Court denies Coleman's motion for summary judgment to the extent Coleman argues that Plaintiffs may not argue a manufacturing defect claim in their case in chief.

Next, Coleman argues that Plaintiffs cannot establish that the manufacturing defect existed at the time the heater left Coleman's control. Under Illinois law, to prevail on a strict products liability claim a plaintiff must establish that "(1) an injury resulted from the condition of the product; (2) the condition of the product was unreasonably dangerous; and (3) the condition existed at the time that the product left the manufacturer's control" *Haddix v. Playtex Family Prods. Corp.*, 138 F.3d 681, 683 (7th Cir. 1998) (citing *Hunt v. Blasius*, 384 N.E.2d 368, 372 (Ill. 1979)).

Coleman contends that the heater was altered after it left Coleman's control. For instance, Coleman presents evidence suggesting that the heater worked properly until the night of the accident. Moreover, Coleman has expert testimony that Coleman's quality assurance guidelines would not allow for a heater to leave the facility in a condition in which the incident heater was discovered. Plaintiffs have contrary evidence. For instance, Dr. Roby has opined that the evidence does not suggest post-sale alteration. Dr. Hutter further opined that there was the absence of evidence indicating an alteration. Thus, a genuine issue of material of fact is present that precludes summary judgment, and the Court denies Coleman's motion in that respect.

c.   Post-Sale Duty to Warn Claim

Next, Coleman argues that it is entitled to judgment as a matter of law on Plaintiff's post-sale duty-to-warn theory.  Specifically, Coleman contends that Plaintiffs are only maintaining two manufacturing defect claims arising from the placement of the thermocouple and the regulator set screw.  Because these defects were not discovered by any party until the testing on January 28 and 29, 2013, Coleman had no duty to warn under Illinois law.  Plaintiffs argue their failure-to-warn claim is appropriate, and that Coleman mischaracterizes Plaintiffs' argument.  Specifically, Plaintiffs contend Coleman focuses on the alleged manufacturing defect discovered during testing rather than Coleman's heaters' production of CO.

In order to prevail on a strict liability claim in Illinois, the plaintiff must establish that the injury "resulted from a condition of the product, that the condition was unreasonably dangerous, and that it existed at the time the product left the manufacturer's control."  *Mikolajczyk v. Ford Motor Co.*, 901 N.E.2d 329, 335 (Ill. 2009).  Plaintiffs may establish that a product was unreasonably dangerous in one of two ways: "(1) because of a design or manufacturing defect, or (2) because of a failure to warn consumers of a danger posed by the product of which the average consumer would not be already aware."  *Haddix*, 138 F.3d at 683.

Here, Plaintiffs clearly base their failure-to-warn claim on the dangerous condition resulting from Coleman's heater's CO production, not the alleged manufacturing defects discovered during testing.  Plaintiffs have provided evidence that many consumers are not aware that Coleman heaters produce potentially lethal CO, and that Coleman's warnings were inadequate.   Accordingly, the Court denies Coleman's motion for summary judgment to that extent.

d.   Warnings Claims

Next, Coleman argues that it is entitled to summary judgment on Plaintiffs' warnings claims.  In their Fourth Amended Complaint, Plaintiffs contend that Coleman failed to warn consumers that its heater "produced deadly levels [of CO] when operated with restricted propane flow from the propane tank."  Coleman contends that Plaintiffs have abandoned any warnings claims because Plaintiffs are arguing that neither Galen Underhill nor Sean Underhill read the warnings.  In their response, Plaintiffs agree that they cannot pursue a claim based on the content of the warnings.  Plaintiffs clarify that their claim is "based on the prominence/saliency of the warning."  Accordingly, the Court grants Coleman's motion for summary judgment to the extent it relates to any claim based on the content of the warning label.

e.   Punitive Damages

Finally, Coleman argues that Plaintiffs' prayer for punitive damages should be stricken because "there is absolutely no evidence of any intentional, deliberate, or outrageous conduct by Coleman that would warrant a jury's consideration of punitive damages."  Coleman makes this argument with respect to Plaintiffs' manufacturing defect and warnings claims.

Under Illinois law, punitive damages "may be awarded when torts are committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others."  *Kelsay v. Motorola, Inc.*, 384 N.E.2d 353, 359 (Ill. 1978).  While the amount of punitive damages is ultimately determined by the jury, "the preliminary question of whether the facts of a particular case justify the imposition of punitive damages is properly one of law."  *Id.*  Punitive damages are not favored, and "the courts must take caution to see that punitive damages are not improperly or unwisely awarded."  *Id.*

Plaintiffs' complaint alleged that

[i]n light of [Coleman]'s knowledge of the hazards and risks of the use of its heaters and with the further knowledge that numerous people had died as a result of [CO] emitted from [Coleman]'s propane radiant heaters that had operated within houses, campers, tents, vehicles and/or other unventilated or enclosed areas, Defendant's conduct manifests a knowing and reckless indifference toward, and a disregard of, the rights of others . . . entitling [Plaintiffs] to an award of punitive damages.

Doc. 67. Plaintiffs then produced evidence indicating that Coleman had knowledge of deaths resulting from the CO emitted from its heaters. Plaintiffs have also produced evidence that Coleman failed to change its warnings despite a suggestion from the Consumer Product Safety Commission, among others, that its warning was inadequate to warn consumers of the dangers of CO. *See* Doc. 135-2. From this evidence, a jury could reasonably conclude that Coleman acted "willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others." Accordingly, the Court denies Coleman's motion for summary judgment to the extent it seeks to strike Plaintiffs' request for punitive damages.

**6. Conclusion**

For the foregoing reasons, the Court

a. **DENIES** Plaintiffs' first motion for summary judgment (Doc. 117) in its entirety;

b. **STRIKES** Plaintiffs' second motion for summary judgment on Coleman's affirmative defenses (Doc. 119); and

c. **GRANTS in part** and **DENIES in part** Coleman's motion for summary judgment (Doc. 123). Specifically, the Court grants Coleman's motion to the extent the Court grants summary judgment on Plaintiffs' (1) design defect claims based on the absence of an ODS and thermocouple placement, and (2)

any claim based on the content of the warning label.  The Court denies the

remainder of Coleman's motion for summary judgment.

**IT IS SO ORDERED.**

**DATED:** February 7, 2014

s/ J. Phil Gilbert<br>
**J. PHIL GILBERT**<br>
**DISTRICT JUDGE**