IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

PAULA UNDERHILL, *Individually and as*
*Special Administrator of the Estate of Galen*
*Underhill*, and SEAN UNDERHILL,

             Plaintiffs,

    vs.                                                         Case No. 12-cv-129-JPG-DGW

COLEMAN COMPANY, INC.,

             Defendant.

**MEMORANDUM AND ORDER**

This matter comes before the Court on plaintiffs Paul Underhill and Sean Underhill's

(collectively "Plaintiffs") Memorandum on Substantially Similar Incidents (Doc. 190).

Defendant Coleman Company, Inc. ("Coleman") filed its response (Doc. 193) to which Plaintiffs

replied (Docs. 199 & 200).  On May 22, 2014, the Court heard oral argument on the matter

pursuant to Federal Rule of Evidence 104.  For the following reasons, the Court finds the 44

previous incidents are not admissible into evidence in this case.

1.  Background

On the night of April 9, 2010, Galen Underhill and his son, Sean Underhill, went

camping in a pop-up camper in Alhambra, Illinois.  To keep warm they used a Powermate Model

5045 propane radiant heater manufactured by Coleman.  During the night, the heater released

deadly amounts of carbon monoxide ("CO").  As a result of their exposure to CO, Galen

Underhill died and Sean Underhill suffered serious injury.

The Powermate 5045 heater is a large commercial heater, designed to operate off of a 20-

pound or larger propane tank, and intended only for outdoor use.  Coleman designed this model

of heater in 1994, and the heater at issue in this case was manufactured in 1995.  The heater

contained a warning identical to that depicted in Figure 1 on the page attached to this Order. On April 9, 2010, and previous occasions, Galen Underhill and/or Sean Underhill used the heater while camping.

On January 10, 2012, Plaintiffs filed their six-count complaint against Coleman in the Circuit Court for the Third Judicial Circuit, Madison County, Illinois. Thereafter, Coleman removed the case to the Southern District of Illinois based on diversity of citizenship pursuant to 28 U.S.C. § 1332.

Initially, Plaintiffs alleged a design defect theory, arguing improper placement of the thermocouple and the absence of an oxygen depletion sensor ("ODS") made the heater unreasonably dangerous. Plaintiffs' experts provided support for these theories based on their involvement in previous Coleman heater design defect cases and without inspection of the incident heater. Thereafter, the parties conducted an inspection of the incident heater and discovered that the thermocouple was not placed in accordance with design specifications.

On February 14, 2014, the Court instructed Plaintiffs to indicate the other incidents it intends to introduce into evidence with statements as to the legal basis for the admission of such evidence. Currently before the Court is Plaintiffs' memorandum in response to that Order. Plaintiffs seek to introduce evidence of 44 incidents involving various models of Coleman heaters. A brief description of the various models of Coleman heaters is appropriate. Coleman first produced its Focus model heaters in the late 1980s. The Focus 3, 5 and 10 heaters used 16 ounce propane bottles for fuel. The Focus 15 and 30 heaters were bulk-mount heaters designed to attach to a 20-pound propane tank. Starting in 1995, Coleman began production of the Powermate line of heaters. Powermate heater models 5012, 5014, 5017, and 5045 were bulk-mount heaters. The instant incident involved a Coleman Powermate 5045 heater. The

Powermate 5045 heater is a commercial heater that operates off of a 20-pound or larger propane tank.  It is rated up to 45,000 BTU of heat output.  Of these various models, Plaintiffs seek to introduce the following: three Focus 5 incidents, ten Focus 15 incidents, four Focus 30 incidents, three Powermate 5012 incidents, eleven Powermate 5014 incidents, three Powermate 5017 incidents, and ten Powermate 5045 incidents.  The Court will turn to consider which, if any, of these incidents are admissible into evidence.

2.   Analysis

Other accident evidence "is relevant to show notice to the defendant of the danger, to show existence of the danger, and to show the cause of the accident."  *Nachtsheim v. Beech Aircraft Corp.*, 847 F.2d 1261, 1268 (7th Cir. 1988).  Prior to admission of other accident evidence, the proponent of the evidence "must show that the other accidents occurred under *substantially similar circumstances*."  *Id*. (citing *Borden, Inc. v. Florida East Coast Ry. Co.*, 772 F.2d 759, 754 (11th Cir.  1985) ("'Whether a *reasonable inference* may be drawn as to the harmful tendency or capacity of [a product] from prior failures depends upon whether the conditions operating to produce the prior failures were *substantially similar* to the occurrence in question.'")).  "Substantially similar" does not mean "identical."  *Dewick v. Maytag Corp.*, 324 F. Supp. 2d 894, 904 (N.D. Ill. 2004) (citing *Mihailovich v. Laatsch*, 359 F.3d 892, 908 (7th Cir. 2004)).  Even if a court finds the incidents are substantially similar, the court may exclude the evidence if its probative value is substantially outweighed by a danger of one or more of the following:  "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403; *Nachtsheim*, 847 F.2d at 1268.

The Court notes that other courts have had occasion to consider the introduction of other accident evidence in the context of Coleman heaters.  For instance, in *Daniel v. Coleman Co.*,

599 F.3d 1045, 1047 (9th Cir. 2010), two men died from CO poisoning while using a Coleman Powermate 5045 heater in their camper.  The plaintiff filed a wrongful death claim alleging (1) Coleman failed to provide adequate warnings, and (2) the heater was "defectively designed because it was more dangerous than a reasonable consumer would expect, and because it lacked alternative design features which would have made the heater more safe."  *Id.*  The trial court allowed the jury to hear about five other CO deaths resulting from the use of Powermate 5045 heaters in enclosed spaces; however, the trial court excluded other accidents that involved different Coleman heater models.  *Id.*

On appeal, the plaintiff argued that the trial court erred when it excluded other accident information involving the use of other models of Coleman heaters.  *Id.* at 1048.  Specifically, the plaintiff argued the other model accidents were relevant "to prove that Coleman had knowledge or notice that its propane heater posed a carbon monoxide danger."  *Id.*  The Ninth Circuit rejected the plaintiff's argument finding that there was no need to produce evidence of other incidents to prove notice or knowledge because the parties had already stipulated that "Coleman is aware of incidents in which consumers have allegedly operated Coleman propane radiant heaters in enclosed spaces resulting in the consumers' death from carbon monoxide poisoning."  *Id.*

The *Daniel* court further found that the trial court did not err in excluding this evidence for the purpose of "prov[ing] the substance of [the plaintiff]'s design defect and negligence claims."  *Id.*  The court explained as follows:

> The record suggests that much of the evidence was not in admissible form.  Moreover, the Powermate 5045 heaters were marked for 'outdoor,' 'industrial,' and 'construction' use; they were physically larger and more powerful than the heaters involved in the other incidents; and they included different warning language relating to use in enclosed areas.  The district court acted within its discretion when it referred to these factors in finding that accidents caused by

4

> Coleman's other heater models were not 'substantially similar' to the accident in the present case. *See Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1105 (9th Cir. 1991) (citations omitted) ("[a] showing of substantial similarity is required when a plaintiff attempts to introduce evidence of other accidents as direct proof of negligence, a design defect, or notice of the defect.").

*Id*. With the foregoing standards in mind, the Court will consider whether the other 44 Coleman heater accidents are substantially similar to the instant accident. The Court will start by examining the Focus 5 accidents.

> a.   Focus 5

In the instant case, Plaintiffs argue the three Focus 5 incidents, known to Coleman in 1991, are relevant to show Coleman had notice of the "dangerous characteristics of its radiant propane heaters, the inadequacy of its on-product warnings and awareness that users of their products lacked independent knowledge of the CO risk associated with these products to mitigate and prevent death/injury from CO produced by these heaters in enclosed spaces." Doc. 190, pp. 4-5. Because these incidents occurred prior to the production of the incident heater, they are within the date range of incidents that could have potentially provided notice to Coleman. *See Padilla v. Hunter Douglas Window Coverings, Inc.*, 2014 WL 595051, at *1 (N.D. Ill. Feb. 13, 2014) (stating that for the purpose of showing notice, other accident information may be introduced if the defendant knew or should have known of the risks at the time of manufacture of the product at issue).

Here, for reasons similar to those cited by the *Daniel* court, the Court concludes that the Focus 5 accidents are not substantially similar to the instant Powermate 5045 accident. The Focus 5 heater was intended for inside use, while the Powermate 5045 was intended for outdoor only use. Based on the difference in their intended uses, the heaters also contained different warnings. Further, the fuel source for the two heaters was different. The Focus 5 operated off of

a 16-ounce propane canister, while the Powermate 5045 was designed to attach to a 20-pound propane tank.  Even under the relaxed notice standard, this Court cannot conclude that the Focus 5 accidents are substantially similar to the instant Powermate 5045 accident.

Plaintiffs cite to *Van Den Eng v. The Coleman Company, Inc.*, in support of their argument that the Focus 5 is substantially similar to the incident heater in the instant case.  Case No. 03-C-504, 2006 WL 1663714 (E.D. Wis. Jun. 9, 2006).  The *Van Den Eng* court noted that there were several similarities between the heaters including the use of propane cylinders, the user selection of heat output, the ability to reduce the fuel flow by adjusting the fuel flow at the propane tank or manually holding down the control valve, and the ability to produce lethal amounts of CO under reduced fuel conditions.  *Id*. at *2.  This Court, however, finds the reasoning of the *Daniel* court more persuasive.  Furthermore, the *Van Den Eng* is distinguishable from the instant case.  In *Van Den Eng*, the plaintiffs alleged a design defect in the incident heater, and the prior accidents the plaintiff sought to introduce also alleged a design defect as the cause of the accident.  Here, Plaintiffs allege a manufacturing defect as the cause of the accidents.  As such, the similarities, with the exception for the ability of the heater to produce lethal amounts of CO, noted by the *Van Den Eng* court are irrelevant to this case.  Finally, as Plaintiffs acknowledged, Coleman already admits that its heaters may produce lethal amounts of CO under certain circumstances.  Accordingly, introduction of the Focus 5 incidents for that purpose would amount to the needless introduction of cumulative evidence.

Even if Plaintiffs did convince this Court that the Focus 5 accidents were substantially similar, the Court finds the probative value of the accidents is substantially outweighed by the evidence's potential to confuse the issues, mislead the jury, waste time, and present cumulative evidence.  *See* Fed. R. Evid. 403.  The introduction of the Focus 5 incidents that were tried under

6

a design defect theory will require the introduction of substantial technical evidence to the jury. It will undoubtedly confuse the jury to differentiate the design and manufacturing defect theories in these cases. The potential to produce a mini-trial on each individual incident will unduly waste time. As noted, these prior incidents were alleged as design defects. Now, Plaintiffs will have to produce evidence and argue that manufacturing defects were actually present. Coleman, in turn, will produce its own evidence. Furthermore, Coleman acknowledges that its heaters produce CO when fuel is reduced (*See* Doc. 162, p. 3 (plaintiffs acknowledge Coleman has admitted that all heater models produce CO and produce lethal amounts of CO under certain circumstances)), and the introduction of the Focus 5 incidents for the purposes of notice would amount to the unnecessary introduction of cumulative evidence. Accordingly, the Court excludes any evidence relating to prior Focus 5 incidents.

      b.   Bulk-Mount Heaters (Focus 15 & 30 and Powermate 5102, 5014, 5017, and 5045)

Plaintiffs also seek to introduce 41 accidents resulting from various Coleman bulk-mount heaters, including the Focus 15 and 30 and the Powermate 5102, 5014, 5017, and 5045. Plaintiffs argue these accidents are relevant to show both the existence of a dangerous condition and Coleman had notice of the danger. First, Plaintiffs argue the accidents show existence of the following dangerous conditions: (1) the ability of Coleman bulk-mount heaters to produce deadly amounts of CO when used in enclosed spaces; (2) improperly positioned thermocouple to prevent the heater from operating in reduced fuel flow conditions; and (3) inadequacy of the warning included with Coleman bulk-mount heaters. Second, Plaintiffs argue the accidents are relevant to show Coleman's notice of the following dangers: (1) individuals were using Coleman bulk-mount heaters in enclosed spaces; (2) the warnings were not adequate to deter consumers' use of the bulk-mount heaters in enclosed spaces; and (3) additional and continuing warnings

were necessary to warn current owners of Coleman bulk-mount heaters of the CO risks associated with using Coleman bulk-mount heaters.

The Court will first address the introduction of these prior accidents for the purpose of notice. The three dangers of which Plaintiffs allege these prior accidents provided notice relate to consumers' use of Coleman heaters indoors in disregard of the warning affixed to the various heaters. Other accidents may be introduced to show that a defendant had notice of a dangerous condition after the plaintiff "'show[s] that the manufacturer knew or should have known of the risks posed by the product design *at the time of manufacture*' of the product." *Padilla*, 2014 WL 595051, at *1 (quoting *Jablonski v. Ford Motor Co.*, 955 N.E.2d 1138, 1154 (Ill. 2011)). "[A] continuing duty to warn may be imposed upon the manufacturer if the manufacturer 'knew or should have known the product was unreasonably dangerous *at the time of sale.*'" *Padilla*, 2014 WL 595051, at *1 (quoting *Jablonski*, 955 N.E.2d at 1162).

Coleman manufactured the Powermate 5045 in the instant case in either August or September 1995. The time of sale is unknown. Accordingly, any accidents occurring after that date of manufacture are not relevant to show notice. That leaves two listed accidents as potentially admissible for the purpose of notice – the March 22, 1992 Allen accident and the January 18, 1995 Kabes accident. *See* 190-1. The remaining accidents occurred after the incident Powermate 5045 heater was manufactured and thus cannot provide notice.

The Court must determine whether the two aforementioned Focus 15 accidents were substantially similar to the instant Powermate 5045 accident. The two accidents occurring before the incident heater's manufacture involved Focus 15 heaters that were allegedly defectively designed. Coleman argues that the prior Focus 15 incidents provide notice of the insufficiency of the Powermate 5045 warnings. Accordingly, it is necessary to compare the warnings to

8

determine whether they are substantially similar.  It is important to note that the content of the warnings is irrelevant because Plaintiffs are only pursuing a saliency/prominence claim.  *See Kane v. R.D. Werner Co.*, 657 N.E.2d 37 (Ill. App. Ct. 1995) (agreeing that "a plaintiff who does not read an allegedly inadequate warning cannot maintain a negligent-failure-to-warn action unless the nature of the alleged inadequacy is such that it prevents him from reading it").

The page following this Order includes pictures of the warnings included on the incident Powermate 5045 and Focus 15 heaters.  Figure 1 is an image of the warning included on the Powermate 5045 involved in the instant accident.  Figures 2 through 4 are examples of warnings used on various Focus 15 models.  First, the warnings contain different background and font colors.  The background of the Powermate 5045 warning is bright orange while the backgrounds of the Focus 15 warnings are black.  The font of the Powermate 5045 warning is black, while the fonts of the Focus 15 warnings are white.  Further, the heaters to which these warnings were attached were not similar.  Both the Focus 15 and Powermate 5045 were bulk-mount heaters, but their heat outputs were drastically different.  The Focus 15 was a 15,000 BTU heater, while the Powermate 5045 was a 45,000 BTU heater.  Based on the foregoing, this Court cannot conclude that the Focus 15 warnings were substantially similar to the Powermate 5045 warning for the purpose of showing Coleman had notice that its warning on the Powermate 5045 was inadequate to the extent it prevented the consumer from reading it.

Even if Plaintiffs could present evidence that the other accident warnings were substantially similar to the warning on the heater in the instant case, that evidence would not be appropriate because it would force Coleman to defend against the previous Focus 15 accidents. As a result the jury would be confronted with additional confusing technical evidence regarding design defects and the differences of Coleman Focus 15 and Powermate 5045 heaters.  If the

Court allowed these other accidents into evidence it could significantly prolong the trial. Accordingly, admission of the other accident evidence is inappropriate. *See* Fed. R. Evid. 403.

Next, the Court will address whether these 41 other incidents can be introduced to show evidence of the following dangerous conditions: (1) the ability of Coleman bulk-mount heaters to produce deadly amounts of CO when used in enclosed spaces; (2) failure to include a properly positioned thermocouple to prevent the heater from operating in reduced fuel flow conditions; and (3) absence of an adequate warning. Initially, for the same reasons this Court found the warnings were not substantially similar for purposes of notice, the Court finds the heaters are not substantially similar for the purposes of showing the existence of a dangerous condition related to the adequacy of the warning.

The facts of *Nachtsheim*, *Mihailovich*, and *Dewick* provide this Court guidance in this portion of its analysis. In *Nachtsheim v. Beech Aircraft Corp.*, a Baron 58P plane crashed during icy conditions, in part due to an elevator failure, leaving no survivors. 847 F.2d at 1263-65. The plaintiffs maintained that the Baron 58P's elevator's design rendered the plane unsafe to fly during icy conditions. *Id*. On appeal, the plaintiffs argued the trial court erred when it excluded evidence of the crash of a Baron 58TC plane that also occurred during icy conditions. *Id*. at 1266. The plaintiffs argued the two accidents were substantially similar because they involved identical planes as stipulated by the parties, both pilots were instrument-rated, both accidents occurred in instruments conditions in an icing environment, both accidents involved "a reported accretion of airframe ice," and "both planes were in icing conditions for only a short period of time before control was lost and fatal crashes occurred." *Id*. at 1267.

The Seventh Circuit concluded the trial court properly excluded the other accident evidence because there were too few established facts about the other accident. *Id*. at 1269. In

other cases, the court noted, the proponent of the other accident evidence established facts from which a useful comparison could be made. *Id*. In *Nachtsheim*, however, the plaintiffs were only able to show that both planes were in an icing environment and subsequently crashed, and there was no evidence that the other accident involved an elevator failure. *Id*. Even if the other accident evidence were admissible, the court noted, its introduction was not necessarily appropriate because the defendant would have to now defend against two crashes unnecessarily prolonging the trial and confusing the jury with additional technical evidence. *Id*.

In *Mihailovich v. Laatsch*, the plaintiff brought a legal malpractice case against an attorney that represented her after a car accident that occurred on an "S-curve" during wet conditions. 359 F.3d 892, 894 (7th Cir. 2004). The district court excluded evidence of other accidents that had occurred at the same curve during similar conditions that plaintiff attempted to introduce in her effort to show that she would have prevailed but for the attorney's malpractice. *Id*. at 895. Specifically, the plaintiff sought to introduce evidence of these other accidents to show that the curve was dangerous when wet. *Id*. at 906. The appellate court noted that the court must consider whether the facts of the plaintiff's accident and the other case "reasonably support an inference that all of the accidents share a common cause – i.e., the danger that the plaintiff has alleged." *Id*. at 908. Ultimately, the appellate court concluded the district court erred in excluding the other accidents. Specifically, the other accidents were substantially similar to Mihailovich's accident because the condition of "excessive slipperiness when the pavement was wet" as alleged by Milailovich was present in the other accidents. *Id*. at 909.

The Northern District of Illinois applied *Mihailovich* in *Dewick v. Maytag Corp.*, a products liability case in which a 10-month-old child climbed in the broiler of a Maytag range. 324 F. Supp. 2d at 904. The plaintiff sought to introduce prior accidents in which toddlers had

accessed the broiler for the purpose of showing defendant was on notice of the defective

condition of the range.  *Id*.  Defendant argued that the two other accidents plaintiff sought to

introduce were not substantially similar because the other cases involved children who were

older and it could not be determined that the other children opened the range door in the same

manner as the child in the *Dewick* accident.  *Id*.  The court noted that *Mihailovich* "has recently

reminded that it is the defect or danger alleged by a plaintiff that defines the degree of

commonality required to find incidents substantially similar."  324 F. Supp. 2d at 904.  For

purposes of notice, the court concluded that the prior accidents were substantially similar as

evidence of the danger that "an infant could inadvertently open the broiler door of the particular

model of Maytag range, regardless of the exact mechanism used or the precise age of the child."

*Id*.

Here, like the plaintiff in *Nachtsheim*, Plaintiffs have only shown that similar Coleman

heaters were utilized and the users subsequently suffered CO poisoning.  Unlike the plaintiffs in

*Mihailovich* and *Dewick*, Plaintiffs have failed to present sufficient evidence that the accidents

share a common cause - that a manufacturing defect, as alleged in the instant case, was the cause

of the other accidents.  Rather, the cause of the accidents alleged in the other accidents was a

design defect based, in part, on the design of the thermocouple placement and the absence of an

oxygen depletion sensor.  Not one of these prior incidents resulted in the allegation of a

manufacturing defect claim.  As such, the prior incidents are not substantially similar for the

purposes of showing a dangerous condition in this case.

Plaintiffs cite to *Dowdy v. Coleman Co.*, 2012 WL 4024451, at*12 (D. Utah Sept. 12,

2012) in support of their argument that the heaters are substantially similar.  In *Dowdy* the court

found prior Coleman-heater accidents substantially similar because the heaters had the same

alleged design defect, the heaters were improperly used indoors, and the cases involved the same theories of liability. *Id*. The instant case is obviously distinguishable from *Dowdy* because the alleged cause of the instant accident is a manufacturing defect, while the alleged causes of the *Dowdy* and all other cited cases are design defects.

 At oral argument, Mr. Stageberg acknowledged that a manufacturing defect claim was not alleged in the other cases; however, he argued there was circumstantial evidence of a manufacturing defect. The Court is not convinced that circumstantial evidence is present to support that claim. However, even if Plaintiffs could present evidence that the other accident evidence was admissible, that evidence would not be appropriate because it would force Coleman to defendant against all of the previous incidents. As a result the jury would be confronted with additional confusing technical evidence regarding design defects and the mundane differences of various Coleman heaters. If the Court allowed these 41 other accidents into evidence it could prolong the trial by days or even weeks. Accordingly, admission of the other accident evidence is inappropriate because it would unnecessarily prolong the trial and confuse the jury with the introduction of additional technical evidence. *See* Fed. R. Evid. 403.

 3. Conclusion

 For the foregoing reasons, the Court finds that the previous 44 incidents are not admissible.

   **IT IS SO ORDERED.**

   **DATED:** June 24, 2014

         s/ J. Phil Gilbert
         **J. PHIL GILBERT**
         **DISTRICT JUDGE**

**Attachment 1**



**Figure 1 - Underhill Powermate 5045 Warning**



**Figure 2 – Focus 15 Warning from 1990 to 1991**



**Figure 3 – Focus 15A Warning from 1991 to 1996**



**Figure 4 – Focus 15B Warning from 1995 to 1996**